UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JIMMY L. BENNETT | § | |
|     Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:16-cv-01737 |
| | § | |
| CENTRAL MUTUAL INSURANCE | § | |
| COMPANY, AND JERRY LEE | § | |
| GERRON | § | |
|     Defendants | § | |

## MOTION FOR SUMMARY JUDGMENT

Defendant, Central Mutual Insurance Company ("Central"), files this Motion for Summary Judgment, and in support of same would show the following:

## INTRODUCTION

This lawsuit involves a dispute over the amount of loss sustained to the property at 6722 Green Stone Court, Houston, Texas 77084, belonging to Plaintiff, Jimmy L. Bennett ("Bennett"), as a result of a wind and hail storm that hit the Houston area on or about April 19, 2015. Summary judgment in Central's favor dismissing all of Bennett's claims is required under Texas law, because the dispute over the amount of loss went through the appraisal required by Bennett's insurance contract, and Central timely paid the amount owed pursuant to the appraisal award. Under Texas law, this would preclude, as a matter of law, the contractual and extra-contractual causes of action asserted by Bennett, as the following illustrates.

## EVIDENCE SUPPORTING MOTION

The evidence in support of this motion is contained in Central's Appendix in Support of Motion for Summary Judgment, Doc. No. 15. That evidence is contained in Doc. No. 15-1.

References to such evidence will be made by reference to "Doc. No. 15-1" and the page number(s) of the page(s) being relied upon.

## UNDISPUTED FACTS

Bennett alleges his property located at 6722 Green Stone Court, Houston, Texas 77084 was damaged by wind and hail on or about April 19, 2015.  Doc. No. 1-1, pp. 6-7.  At the time of that storm, Bennett's property located at 6722 Green Stone Ct., Houston, Texas 77084 was insured under a policy issued by Central, being Policy No. FMH 3717377. Doc. 15-1, pp. 4 & 7.  Bennett's insurance contract contains a deductible of $2,310.  Doc. 15-1, p. 8.

Disagreement arose between Central and Bennett over the amount of loss to Bennett's property from the April 19, 2015 storm damage, and when that disagreement could not be resolved, Central demanded appraisal under Bennett's insurance contract. Doc. No. 15-1, pp. 79 & 83-84.  The parties eventually agreed to participate in appraisal, and filed a joint motion to abate this lawsuit.  Doc. No. 10.  In that motion, the parties agreed to abate the lawsuit while the appraisal pursuant to Bennett's insurance contract was conducted, and for thirty days after completion of the appraisal.  *Id*.  The Court granted this agreed motion to abate on August 23, 2016.  Doc. No. 11.

The appraisal was completed on September 27, 2016, which was the date the two appraisers, Robert Christopher White and James Wesselski, signed an appraisal award.  Doc. No. 15-1, pp. 2-3.  The appraisal award was for a replacement cost loss of $15,063.36, and an actual cash value loss of $11,859.68. Doc. No. 15-1, p. 3.

The appraisal award was sent to Central on November 3, 2016.  This occurred when Central's appraiser, Robert Christopher White, e-mailed a copy of the appraisal award to Central's attorney Russell J. Bowman, at 2:37 p.m. on November 3, 2016.  Doc. No. 15-1, pp. 2, 5 & 80.   Central

**MOTION FOR SUMMARY JUDGMENT - PAGE 2**

received the award that same day, November 3, 2016, when Central's attorney e-mailed the award to Lina Richardson with Central at 8:28 p.m. on November 3, 2016. Doc. No. 15-1, pp. 5 & 80.

With the appraisal award being for $15,063.36, after applying the $2,310 deductible under the policy, that would make the amount of loss recoverable under the policy equal to $12,753.36. Doc. No. 15-1, p. 5. Central issued payment (Check No. 920147) to Bennett for this amount on November 7, 2016. Doc. No. 15-1, pp. 5 & 71. On November 8, 2016, the following items were sent by overnight delivery (FedEx) to Bennett's attorney of record, Mr. Brian Fitts: (1) Central's check for $12,753.36; (2) the letter conveying the final decision on Bennett's claim and the basis for same; and (3) a copy of the appraisal award. Doc. No. 15-1, pp. 5, 72-78 & 80. All of those items were delivered at the office of Bennett's attorney at 9:33 a.m. on November 9, 2016. Doc. No. 15-1, p. 80.

Thus, the evidence is undisputed that less than five business days after Central received the appraisal award, payment of the amount owed under the insurance contract, as set by the appraisal award, was received by Bennett's attorney. As will be further shown, this requires all of the claims asserted by Bennett be dismissed as a matter of law, so that Central is entitled to summary judgment dismissing Bennett's lawsuit.

### PERTINENT POLICY PROVISIONS

The Central insurance contract contains two provisions pertinent to this matter. One such provision is the appraisal clause of the contract, which provides:

> **Appraisal**
>
> If you and we disagree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a

written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. **The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss.** If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

**1.** Pay its own appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

Doc. No. 15-1, p. 30. (Emphasis added).

The other pertinent provision is the "Loss Payment" provision, which is contained in the "SPECIAL PROVISIONS -TEXAS" endorsement. This provision states:

**J.     Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the Policy or is legally entitled to payment.

If we notify you that we will pay your claim, or part of your claim, we must pay within five "business days" after we notify you. If payment of your claim or part of your claim requires the performance of an act by you, we must pay within five "business days" after the date you perform the act.

Doc. No. 15-1, p. 56.

## ARGUMENT AND AUTHORITIES

### A.     Bennett's Breach of Contract Claim

Bennett has asserted a claim against Central for breach of contract. Doc. No. 1-1, p. 10. Summary judgment dismissing that claim is required, as the following illustrates.

1.  **Payment of Appraisal Award Precludes
    Breach of Contract Claim as a Matter of Law**

In *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 895 (Tex. 2009), the Texas Supreme Court, in upholding an appraisal clause in a property insurance policy, noted that in every property damage claim, "someone must determine the amount of loss", and that an appraisal clause binds the parties to have the extent or amount of the loss determined in a particular way. *Id*. at 895. Appraisal conclusively determines the "amount of loss" owed under an insurance policy. *James v. Property and Casualty Insurance Company of Hartford*, 2011 WL 4067880, at *2 (S.D. Tex. 2011).

An insurer does not breach the insurance contract where, as here, the insurer pays all damages determined by the appraisal. *Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 344 (Tex.App.-Corpus Christi 2004, rev. denied) (insurer fulfilled every requirement of contract where it participated in appraisal process and timely paid amount set by appraisal award); *Scalise v. Allstate Texas Lloyds*, 2013 WL 6835248, at *4 (S.D. Tex. 2013); *Anderson v. American Risk Insurance Company, Inc.*, 2016 WL 3438243, at *4 (S.D. Tex. 2016); *Beck v. Allstate Texas Lloyds*, 2014 WL 12531348, at *3 (S.D. Tex. 2014).

When an insurer timely pays an amount awarded by an appraisal proceeding, the insurer is entitled to summary judgment on the insured's breach of contract claim. *United Neurology, P.A. v. Hartford Lloyd's Ins. Co.*, 101 F.Supp.3d 584, 619-20 (S.D.Tex. 2015), *aff'd*, 624 Fed.Appx. 225, (5th Cir. 2015). Numerous other cases applying Texas law have similarly held that when an insurer timely pays an appraisal award, no breach of contract has occurred, so that the insurer is entitled to summary judgment on the insured's breach of contract claim. See, e.g., *See, e.g., Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.,* 877 S.W.2d 872, 875–76 (Tex.App.-San Antonio 1994,

no writ); *Brownlow v. United Services Automobile Assoc.,* 2005 WL 608252, at *2 (Tex.App.-Corpus Christi 2005, rev. denied); *Caso v. Allstate Texas Lloyds,* 2014 WL 528192, at *5 (S.D.Tex. 2014); *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 787 (Tex.App.-Houston [14th Dist.] 2004, no pet.); *Blum's Furniture Co., Inc. v. Certain Underwriters at Lloyds London*, 459 Fed.Appx. 366, 369, 2012 WL 181413, at *3 (5th Cir. 2012); *Guitierrez v. State Farm Lloyds*, 2016 WL 3387179, at *4-5 (S.D. Tex. 2016); *Toonen v. United Services Automobile Association*, 935 S.W.2d 937, 941-942 (Tex.App.-San Antonio 1996, no writ) (summary judgment dismissing insured's contractual and extra-contractual claims proper where insurer paid appraisal award within seven days of receiving same).

As the appraisal in this matter established the amount of loss, and since the evidence to this motion undisputably shows Central paid Bennett the amount set by the appraisal award, Bennett's cause of action for breach of contract must be dismissed. Arguments which Bennett is likely to make in response would not change this result.

### 2. Difference Between Appraisal Award and Insurer's Assessment of Loss

The fact that the appraisal award was for more than the amount of loss determined by Central would not preclude summary judgment in Central's favor on Bennett's breach of contract claim. This is because the law is well settled in Texas that the fact the appraisal award was more than the amount of loss determined by the insurer is not evidence of a breach of contract.

Numerous Texas courts hold that when appraisal results in a payment to an insured, this is not evidence of a breach of contract so as to preclude summary judgment for the insurer. *Breshears*, 155 S.W.3d at 343 ("[Plaintiffs] may not use the fact that the appraisal award was different than the amount originally paid as evidence of breach of contract, especially when the contract they claim is

being breached provides for resolution of disputes through appraisal."); *Anderson v. American Risk Insurance Company, Inc.*, 2016 WL 3438243, at *4 (Tex.App.-Houston [1st Dist.], 2016) ("By payment of the full amount of an appraisal award, the insurer 'complie[s] with every requirement of the contract, [and] it cannot be found to be in breach.'") (quoting *Breashears*); *Richardson East Baptist Church v. Philadelphia Indemnity Insurance Company*, 2016 WL 1242480, at *5 (Tex.App.--Dallas 2016. pet. filed); *Amine v. Liberty Lloyds of Tex.Ins.Co.*, 2007 WL 2264477 at *4-5 (Tex.App.–Houston [1st Dist] 2007, no pet.); *Allison v. Fire Ins. Exch.,* 98 S.W.3d 227, 253 (Tex.App.-Austin 2002, pet. abated); *Blum's Furniture Co., Inc. v. Certain Underwriters at Lloyds London*, 459 Fed.Appx. 366, 369, 2012 WL 181413, at *3 (5th Cir. 2012); *Scalise v. Allstate Texas Lloyds*, 2013 WL 6835248, at *5 (S.D.Tex. 2013) (stating that "where the parties disagree on the amount of loss and submit to the contractual appraisal process to resolve that dispute, and the insurer pays all covered damages determined by the award, the insured may not then argue that the initial failure to pay those damages equates to a breach of the contract"); *Moore v. Allstate Texas Lloyds*, 2014 WL 903131, at *5-6 (S.D.Tex. 2014); *Devonshire Real Estate & Asset Management, LP v. American Ins. Co.,* 2014 WL 4796967 at *16 (N.D.Tex. 2014; *United Neurology, P.A. v. Hartford Lloyd's Ins. Co.*, 101 F.Supp.3d 584, 619-20 (S.D.Tex. 2015), *aff'd*, 624 Fed.Appx. 225 (5th Cir. 2015); *Quibodeaux v. Nautilus Insurance Co.*, 2015 WL 1406375, at *5 (E.D.Tex. 2015), *aff'd*, 655 Fed.Appx. 984 (5th Cir. 2016) (appraisal is meant to "prevent the insured from taking advantage of the binding appraisal process to determine the value of its claim and then, after the insurer fully pays the appraisal award, suing the insurer for its initial failure to pay."); *Studer v. Lloyds*, 2016 WL 4063782, at *7 (E.D.Tex. 2016).

Based on these clear authorities, the fact that the appraisal award determined the amount of

loss to be greater than what Central had determined would not create an issue of fact precluding summary judgment for Central. As long as Central paid the award, and as the evidence is undisputed Central paid the amount set by the appraisal award, summary judgment in Central's favor on Bennett's breach of contract claim is required.

### 3. Award Timely Paid by Central

In the event Bennett argues that the 37 days it took for the appraisal award to be sent to Central somehow creates a fact issue as to whether the award was timely paid, such an argument would be without merit. The provisions of the Central insurance contract, and the undisputed evidence, show Central timely paid the appraisal award.

The Loss Payment clause in the contract states that "If we notify you that we will pay your claim, or part of your claim, **we** must pay within 5 business days after we notify you." Doc. No. 15-1, p. 56. Courts have applied this provision as written, and held that the deadline for payment only begins to run when an insurer notifies its insured that it will pay a claim. See *McEntyre v. State Farm Lloyds, Inc.*, 2016 WL 6071598, at *5 (E.D.Tex. 2016); *Gabriel v. Allstate Texas Lloyds*, 2013 WL 7885700, at *6 (S.D.Tex. 2013).

In *McEntyre*, the court examined the same Loss Payment provision contained in Bennett's insurance contract. *McEntyre*, at *5. In granting summary judgment to the insurer, the court in *McEntyre* held that the time to pay an appraisal award did not begin to run until the insurer stated that it would pay the award. *McEntyre*, at *5. The facts in *McEntyre* were: (1) the policy required the insurer (State Farm) to pay a claim within five (5) business days of notifying the insureds it would pay the claim; (2) State Farm received the signed appraisal award on October 7, 2015; and (3) on October 15, 2015, six business days after receiving the award, State Farm notified the insureds

it accepted the appraisal award and enclosed its payment of $4,326.26 based on the appraisal award. The court in *McEntyre* held that State Farm timely paid the award by tendering payment the same day it notified the insureds that it would pay the appraisal award. *Id.* at *5.

The facts in this case are even stronger than those in *McEntyre*. The insurer in *McEntyre* (State Farm) did not send out payment of the award until six business days after receiving the award. Further, the letter sent out by the insurer in *McEntyre* purportedly enclosing the payment, did not enclose the payment, as State Farm inadvertently did not include the payment with its October 15, 2015 letter. State Farm sent the payment via overnight mail on October 29, 2015. Thus, payment of the award in *McEntyre* was not delivered to the insured until nineteen business days after the insurer had received the award.

Here, Central's payment of the award was actually delivered to Bennett's attorney four business days after Central received the award. Doc. No. 15-1, pp. 1-2, 5 & 80. Based on this, if summary judgment for the insurer in *McEntyre* was appropriate, such is certainly required in this case for Central.

In *Gabriel*, the insurance policy also contained a Loss Payment provision which stated that "If we notify you that we will pay your claim, or part of your claim, we must pay within 5 business days after we notify you." *Gabriel*, at *4. The appraisal award in *Gabriel* was received by the insurer on January 7, 2013, but the insurer did not send payment for the appraisal award to the insured until January 21, 2013. *Id.* at *1. While the insured argued that a five business day deadline should apply, the court noted "that the five day period, as asserted by Gabriel, is not required by the insurance code, the policy, or appraisal award itself." *Id.* at *4. In *Gabriel*, the Court held the insurer satisfied the timeliness requirement when it included a check for payment of an appraisal

award with the insurer's letter accepting the award. *Id.* at *4.

The facts in this case are even stronger than in *Gabriel*. The appraisal award in *Gabriel* was rendered in late September of 2012. *Gabriel*, at *1. The insurer in *Gabriel* did not receive the appraisal award until January 7, 2013, a time period of over three months from the rendering of the award. The insurer in *Gabriel* did not send payment of the award to the insured until fourteen days after receiving the award. The Court in *Gabriel* found the insurer's payment timely, even though the insurer paid the award fourteen days after receiving the award, because that was the same day the insurer gave the insured notice that the insurer would pay the claim.

Here, the time period between when the award was rendered and when Central received the award was far less than *Gabriel*. The time period in *Gabriel* between when the award was rendered and when it was sent to the insurer was over three months, whereas here it was thirty-seven days. (1-3, 5 & 80). Further, unlike the insurer in *Gabriel*, Central paid the award within five business days of receipt of the award. Doc. No. 15-1, pp. 5 & 71-80. Thus, by every measure, the award was paid faster in this case than it was in *Gabriel* or *McEntyre*. If the evidence in *Gabriel* and *McEntyre* was sufficient to constitute a timely payment of the award and summary judgment for the insurer in those cases, such certainly exists in this case, since under every aspect, the appraisal award in this case was handled by Central in an even timelier fashion, and the award paid quicker, than in *McEntyre* and *Gabriel*. As summary judgment was appropriate for the insurer in those cases, such would clearly be required for Central in this case.

Central informed Bennett that it would pay the appraisal award by the November 8, 2016 letter from Central's attorney to Bennett's attorney. Doc. No. 15-1, pp. 5 & 71-80. Included with that letter was Central's check for the amount of the appraisal award, less the policy deductible.

**MOTION FOR SUMMARY JUDGMENT - PAGE 10**

(Doc. No. 15-1, pp. 5 & 71-80. When Central's check for the amount due based on the appraisal award was delivered to Bennett's attorney on November 9, 2016, at the same time as the letter communicating that Central would pay the appraisal award, this plainly complied with the Loss Payment provision in the Central policy, as shown by *McEntyre* and *Gabriel*.

Further illustrating the timeliness of Central's payment of the award is the appraisal clause itself. That clause provides that when the appraisers agree on the amount of loss, the amount of loss becomes set when the appraisers' agreement has been submitted to Central. (30). Why does the amount of loss only become set when the appraisers' agreement is submitted to the Central? This is because until Central knows of such agreement, it cannot act upon same. The appraisers' agreement on the amount of loss was submitted to Central on November 3, 2016. Doc. No. 15-1, pp. 1-2, 5, 77 & 80. Central's payment of the appraisal award within five business days of that date was thus timely as a matter of law, so that summary judgment dismissing Bennett's breach of contract claim is required.

### 4.   Whether Insured Accepts Appraisal Award Payment is Irrelevant

Should Bennett argue that appraisal is not binding, because he has not accepted the payment of the award, such a claim would not preclude summary judgment for Central. Whether or not Bennett actually cashes or negotiates the check issued by Central to pay the award does not determine whether the appraisal has resolved all claims against Central. It is the completion of the appraisal process and payment of the appraisal award that entitles Central to summary judgment on Plaintiff's claims, not whether Bennett cashes or negotiates Central's check paying the award.

In many cases, an insured has attempted to avoid the results of an appraisal and tried to maintain a lawsuit against the insurer by refusing to accept the insurer's payment of the appraisal

award. Courts addressing this issue uniformly hold that if the appraisal award has been rendered and the insurer makes payment based on the award, this is legally sufficient to entitle the insurer to summary judgment on the breach-of-contract claim, regardless of whether the insured accepts the insurer's payment. *United Neurology*, 101 F.Supp.3d 584, 619-20 (S.D.Tex. 2015), *aff'd*, 624 Fed.Appx. 225 (5th Cir. 2015); *Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.,* 877 S.W.2d 872, 875–76 (Tex.App.-San Antonio 1994); *Toonen v. United Services Automobile Assoc.,* 935 S.W.2d 937, 940 (Tex.App.-San Antonio 1996, no writ); *Brownlow v. United Services Automobile Assoc.,* No. 13–03–758–CV, 2005 WL 608252, at *2 (Tex.App.-Corpus Christi 2005); *Caso v. Allstate Texas Lloyds,* 2014 WL 528192, at *5 (S.D.Tex. 2014); *Devonshire Real Estate & Asset Management, LP v. American Insurance Company*, 2014 WL 4796967, at *16 (N.D. Tex. 2014)*; Quibodeaux v. Nautilus Insurance Co.*, 2015 WL 1406375, at *7 (E.D.Tex. 2015), *aff'd*, 655 Fed.Appx 984 (5th Cir. 2016); *TMM Investments, Ltd. v. Ohio Cas. Ins. Co.*, 730 F.3d 466, 475 (5th Cir. 2013); *Moore v. Allstate Texas Lloyds*, 2014 WL 903131, at *5-6 (S.D.Tex. 2014). Thus, whether or not Bennett accepts payment of the appraisal award, Central is entitled to summary judgment on Bennett's breach of contract claim.

  **B.**  **Bennett's Extra-Contractual Claims**

  Bennett has asserted various extra-contractual claims against Central. These include claims for unfair settlement practices under the Insurance Code, claims under the Deceptive Trade Practices Act, and for breach of the duty of good faith and fair dealing. Doc. No. 1-1, pp. 11-16. Central's payment of the appraisal award precludes those claims as a matter of law, as the following illustrates.

  An insured may not prevail on a bad faith claim without first showing that the insurer breached the contract. *Republic Ins. Co. v. Stoker,* 903 S.W.2d 338, 341 (Tex.1995); *Transportation*

*Ins. Co. v. Moriel,* 879 S.W.2d 10, 17 (Tex.1994)*; Liberty Nat. Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996). As the undisputed evidence highlighted above shows that Central did not breach its contract with Bennett, summary judgment must be granted dismissing all of Bennett's extra-contractual claims, including Bennett's claims for unfair settlement practices under Chapter 541 of the Texas Insurance Code, Bennett's claims under the Deceptive Trade Practices Act, and Bennett's claims for violations of the duty of good faith and fair dealing.

Further, Texas law is clear that where an insurer has timely paid an appraisal award, this precludes any contractual or extra-contractual claim against the insurer as a matter of law. See *Toonen v. United Services Automobile Association*, 935 S.W.2d 937, 941-942 (Tex.App.-San Antonio 1996, no writ) (summary judgment dismissing insured's contractual and extra-contractual claims proper where insurer paid appraisal award within seven days of receiving same); *Franco v. Slavonic Mutual Fire Insurance Association*, 154 S.W.3d 777, 787-789 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (summary judgment dismissing insured's contractual and extra-contractual claims proper where insurer paid appraisal award within nine days from award being rendered, and insured accepted payment and deposited the check for the amount of the appraisal award); and *Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 345-46 (Tex.App.-Corpus Christi 2004, rev. denied) (summary judgment dismissing insureds' contractual and extra-contractual claims proper where insurer paid appraisal award within thirty days from the appraisal award). See also *Blum's Furniture Co., Inc.,* 459 Fed.Appx. 366, 369, 2012 WL 181413, at *3 (5th Cir. 2012) (upholding summary judgment on insured's extra-contractual claims where the insured timely paid an appraisal award).

Following these clear authorities, numerous Texas federal decisions hold that the insurer's

payment of the appraisal award precludes any extra-contractual claim against the insurer as a matter of law. See for example, *United Neurology, P.A. v. Hartford Lloyd's Ins. Co.*, 101 F.Supp.3d 584, 598 & 620 (S.D.Tex. 2015), *aff'd*, 624 Fed.Appx. 225 (5th Cir. 2015); *Scalise v. Allstate Texas Lloyds*, 2013 WL 6835248, at *5-8 (S.D.Tex. 2013); *Moore v. Allstate Texas Lloyds*, 2014 WL 903131, at *6-8 (S.D.Tex. 2014); *Quibodeaux v. Nautilus Insurance Co.*, 2015 WL 1406375, at *8-9 (E.D.Tex. 2015), *aff'd*, 655 Fed.Appx. 984 (5th Cir. 2016); *Gabriel v. Allstate Texas Lloyds*, 2013 WL 7885700, at *4-7 (S.D. Tex. 2013); and *McEntyre v. State Farm Lloyds*, 2016 WL 6071598, at *6 (E.D. Tex. 2016).

As the evidence in this matter is undisputed that the appraisal award was timely paid by Central, this would require that all of Bennett's extra-contractual claims against Central, including his claims for unfair settlement practices under Chapter 541 of the Texas Insurance Code, claims under the Deceptive Trade Practices Act, and claims for violation of the duty of good faith and fair dealing, be dismissed with prejudice.

### C.     Bennett's Chapter 542 Insurance Code Claims

Bennett has asserted claims under Section 542.051 et. seq. (formerly article 21.55) of the Texas Insurance Code. This statute is known as the Prompt Payment of Claims Act, and provides for interest of 18% and attorney's fees. Insurance Code Section 542.060(a). Bennett's claims under Chapter 542 of the Insurance Code are without merit as a matter of law, based on Central's timely payment of the appraisal award rendered concerning Plaintiff's insurance claim.

#### 1.     Timely Payment of Appraisal Award Precludes Chapter 542 Claim

Full and timely payment of an appraisal award under the policy precludes an award of the statutory penalties (being the 18% interest and attorney's fees) under the Prompt Payment of Claims

Act as a matter of law. *Breshears*, 155 S.W.3d at 344; *Bernstein v. Safeco Insurance Company of Illinois*, 2015 WL 3958282 at *1-2 (Tex.App.-Dallas 2015, no pet.) (not designated for publication); *United Neurology*, 101 F.Supp.3d at 598-99; *Waterhill Cos. Ltd. v. Great American Assurance Co.*, 2006 WL 696577 at *2 (S.D.Tex. 2006); *Amine v. Liberty Lloyds of Texas, Ins. Co.*, 2007 WL 2264477 at *4 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (not designated for publication); *In re Slavonic Mut. Fire Ins. Ass'n,* 308 S.W.3d 556, 563–64 (Tex.App.–Houston [14th Dist.] 2010, no pet.); *Quibodeaux v. Nautilus Insurance Co.*, 2015 WL 1406375, at *8–9 (E.D.Tex., 2015), *aff'd*, 655 Fed.Appx. 984, 988 (5th Cir. 2016).

The most recent Texas appellate decision addressing this issue is *Anderson v. American Risk Insurance Company*, 2016 WL 3438243, at *5 (Tex.App.-Houston [1st Dist.] 2016, no pet.), where the Court held that an insurer's full and timely payment of an appraisal award precludes an insured from maintaining a Chapter 542 claim as a matter of law. All of these authorities show Bennett's Chapter 542 claims fail as a matter of law.

### 2. Bennett's Likely Argument in Response

The period of time between when the award was rendered (September 27, 2016) and payment of the award was delivered (November 9, 2016) is forty-five days. Should Bennett argue that payment of the award delivered to him forty-five days after the award was rendered somehow precludes summary judgment on Bennett's Chapter 542 claims, such argument fails for two reasons. First, the award was timely paid as demonstrated above. Second, the 18% interest and attorney's fees are only recoverable if the insurer delays more than sixty days in paying the claim. Tex.Ins.Code § 542.058(a). As payment of the appraisal award was delivered to Bennett's attorney less than sixty days from the date of the appraisal award, the necessary predicate under Section

542.058(a), a delay of over sixty days in making payment, cannot exist. This further demonstrates that Bennett's Chapter 542 claims fail as a matter of law.

As the undisputed evidence highlighted above shows that Central timely paid the appraisal award, Bennett's claims for the 18% interest and attorney's fees under the Texas Prompt Payment of Claims Act fail as a matter of law. Therefore, summary judgment dismissing those claims with prejudice is required.

## CONCLUSION AND PRAYER

For all of the above reasons, Defendant, Central Mutual Insurance Company, prays that this motion be granted in its entirety, and that after all due proceedings be had, that summary judgment be granted to Central Mutual Insurance Company, dismissing with prejudice all of Plaintiff's causes of action asserted against it in this Lawsuit, and for any and all other relief to which Defendant may be entitled, at law or in equity.

Respectfully submitted,

/S/Russell J. Bowman
Russell J. Bowman, Attorney in Charge
Texas State Bar No. 02751550
Southern District Bar No. 20283
800 West Airport Freeway, Suite 860
Irving, Texas 75062
(214) 922-0220
(214) 922-0225 (FAX)
E-Mail: russelljbowman@sbcglobal.net
ATTORNEY FOR DEFENDANT
CENTRAL MUTUAL INSURANCE CO.

## CERTIFICATE OF SERVICE

This is to certify that on January 4, 2017, I electronically filed the foregoing document with the clerk of court for the U. S. District Court, Southern District of Texas, using the electronic case

filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means: Bryant Fitts, attorney for Plaintiff.

/S/Russell J. Bowman
Russell J. Bowman